**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**KENNETH WHITE**                                                            **PLAINTIFF**

**v.**                                        **4:10-cv-01422-BRW**

**SOCIAL SECURITY ADMINISTRATION**                            **DEFENDANT**

<u>**ORDER**</u>

Plaintiff has appealed the final decision of the Commissioner of the Social Security
Administration ("SSA") to deny his claim for Disability Insurance benefits.  For the reasons set out
below, the decision of the Commissioner is AFFIRMED.

**I.      BACKGROUND**

On May 15, 2008, Plaintiff applied for Title II disability insurance benefits, claiming that
because of his disabling condition (Crohn's Disease), he had been unable to work since October 24,
2003.[1]  Plaintiff's application was denied on June 11, 2008, based on a finding that his "condition
was not serious enough to be considered disabling according to the Social Security disability rules
and regulations."[2]

Plaintiff filed a request for reconsideration on August 11, 2008, contending that the Social
Security Administration's determination was wrong because his "illness causes severe pain."[3]
Plaintiff then filed a request for a hearing before an administrative law judge.[4]  His hearing was held

---

[1] Tr. 94, 110.

[2] Tr. 60.

[3] Tr. 67.

[4] Tr. 68-69

on July 17, 2009, before Administrative Law Judge ("ALJ") Penny M. Smith.[5]  At the hearing,

Plaintiff was represented by Mr. Herbie Branscomb, and Mr. Jim Spraggins testified as a vocational

expert.[6]  Testimony at the hearing revealed that when Plaintiff's insured status expired, he was 45

years old with a high school education and a past work history that included installing drywall and

working in general construction.[7]

On February 26, 2010, ALJ Glenn Neel, to whom the case was reassigned, issued a decision

finding that Plaintiff was not disabled.[8]  Plaintiff requested that the Appeals Council review the

ALJ's decision.  On August 13, 2010, the Appeals Council declined to review the ALJ's decision,

rendering the ALJ's decision the final decision of the Commissioner.[9]

Plaintiff filed the instant Complaint on September 28, 2010.[10]  In his subsequently filed Brief,

Plaintiff argues that:  (1) the unfavorable decision by ALJ Neel was not based upon substantial

evidence; and (2) the reassignment of the case from ALJ Smith to ALJ Neel, without an explanation,

violated his due process rights.[11]

---

[5] Tr. 21-57.

[6] Tr. 21.

[7] Tr. 30-31, 38.

[8] Tr. 6-16.

[9] Tr. 1-5.

[10] Doc. No. 2.

[11] Doc. No. 10.

## II.    DISCUSSION

### A.    ALJ Neel's Decision

#### 1.    How the Commissioner Determines Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he is unable to engage in "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[12] The Commissioner follows the five-step process set out in 20 C.F.R. § 426.920(a) in making a disability determination. The five steps are: (1) determine whether the claimant is currently engaged in substantial gainful activity;[13] (2) if the claimant proves that he is not engaged in gainful activity, the Commissioner determines whether the claimant suffers from a severe impairment, defined as an impairment that "significantly limits your physical or mental ability to do basic work activities;"[14] (3) if the claimant suffers from a severe impairment, the next step is to determine if the impairment equals or exceeds one of those impairments included in the Listing of Impairments in Appendix 1 of the regulations[15] – if so, the claimant is entitled to Social Security benefits; if not, the Commissioner continues to the last two steps; (4) determine the claimant's residual functional capacity and whether the claimant's impairment allows him to resume his previous work; and (5) if the claimant cannot resume his previous work, the Commissioner must

---

[12]42 U.S.C. § 423(d)(1)(A).

[13]Substantial gainful activity is work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.972.

[14]20 C.F.R. § 416.920(c). The impairment must have lasted, or must be expected to last, for a continuous 12-month period. 20 C.F.R. § 416.909.

[15]20 C.F.R. § 416.920(d).

consider whether the claimant is able to perform other work or is entitled to Social Security benefits.[16]

A claimant must establish disability through objective medical evidence.[17] "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques . . . ."[18]  The credibility of the claimant is a significant factor that the Commissioner is required to consider along with medical evidence.[19]

### 2.    Standard of Review

The Court's review function of the Commissioner's disability determination is very limited. On review, the Court must determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether the Plaintiff was denied benefits as a result of legal error.[20]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[21]  In assessing the substance of the evidence, the Court must consider evidence that both supports and detracts from the Commissioner's decision; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.[22]

---

[16]20 C.F.R. § 416.920(g); 20 C.F.R. § 416.920(a)(4)(v).

[17]42 U.S.C. § 423(d)(5)(A).

[18]*Id.*

[19]20 C.F.R. § 416.929.

[20]*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. § 405(g).

[21]*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

[22]*Woolf v. Shalala*, F.3d 1210, 1213 (8th Cir. 1993).

### 3.      ALJ Neel's Ruling was Based on Substantial Evidence

Plaintiff contends that the Commissioner failed at Step 4 of the 5-step process.[23]  At Step 4, the ALJ found that "through the date last insured, the claimant had the residual functional capacity to perform the full range of light work.[24]  Neither party disputes that the date last insured was March 31, 2005.  The ALJ concluded that Plaintiff "must establish a disability on or before that date in order to be entitled to a period of disability and disability insurance benefits."[25]  In concluding that Plaintiff was not disabled, the ALJ considered Plaintiff's past medical and work history, made credibility determinations, and considered all relevant testimony.[26]

### a.      Past Medical History

In his opinion, the ALJ discussed that Plaintiff had a recorded history of bowel disease since 1990, and that Dr. Johnson had been his treating physician from the beginning.[27]  Plaintiff testified that while in the hospital in 2003 for inflammatory bowel disease, he was found to have IDDM [diabetes] for which he took insulin shots for 30 days.[28]  He was also diagnosed with Crohn's Disease and steroid induced hyperglycemia.[29] After his hospitalization, Plaintiff did well and gained around 20 pounds.[30]

---

[23] Doc. No. 10.

[24] Tr. 12.

[25] Tr. 9.

[26] Tr. 6-14.

[27] Tr. 12.

[28] *Id.*

[29] *Id.*

[30] *Id.*

The ALJ also considered evidence offered by Dr. Johnson that he saw Plaintiff on December 3, 2002, and noted that "he had not seen the [Plaintiff] for about four years and that the claimant was in for a follow-up appointment."[31]  At this time, Plaintiff informed Dr. Johnson that he had been off of his medication and was doing pretty well until he noticed an increase in his stool frequency.[32] Despite these complaints, Dr. Johnson noted that Plaintiff appeared to be in good health with no "significant weight change [146 pounds], unusual fatigue, change in appetite or unexplained fever."[33]  Plaintiff returned for a routine follow-up on October 30, 2003.[34]  Plaintiff complained of "persistent weight loss, extreme diarrhea, general fatigue, and occasional nausea and vomiting and was generally not feeling well."[35]  Plaintiff declined any surgery, but chose to control his Crohn's Disease with medications.[36]  At this point, Dr. Johnson stressed the importance of follow-up visits and strict compliance with his medications.[37]

Dr. Johnson saw Plaintiff three months later, on January 5, 2004.[38]  He noticed a marked improvement in Plaintiff's health, he was gaining weight (163 pounds), his bowels were normal, and he had no irregular bleeding.[39]  On November 6, 2006, Plaintiff was hospitalized for diarrhea and

---

[31] *Id*. at 12-13.

[32] *Id*. at 13.

[33] Tr. 13.

[34] *Id*.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] Tr. 13.

weight loss.[40]  While this is after the date Plaintiff was last insured for disability purposes, the ALJ

noted it to be important because "the claimant was off his necessary medical therapies at that time

and was admitted for hydration and further evaluation."[41]

In evaluating Plaintiff's claim, the ALJ rightly took into consideration that Plaintiff's

condition was and is manageable when he properly takes his medication and sees his doctor

regularly.  Specifically, he states

> [t]he undersigned notes significant gaps in the claimant's medical treatment and poor
> compliance with his medications and recommended routine regular physician visits.
> Dr. Johnson has a longstanding history as the claimant's treating physician but never
> placed any limitations regarding [Plaintiff's] ability to function during the period of
> time in question.  In fact, the undersigned notes that, during the period in question,
> the claimant did well when he was compliant with his medications and followed-up
> with his appointments. The undersigned further notes that Dr. Johnson provided
> sample medications when requested and saw the claimant at no charge when
> needed.[42]

I agree with the ALJ that Plaintiff's condition is manageable when he wants it to be.  Plaintiff's

choices to let his appointments lapse and not keep up with his care are attributable to only him.

### b.  Past Relevant Work

At the hearing, the ALJ also took a considerable amount of time discussing Plaintiff's

relevant work history.[43]  Specifically, she looked at his history from the date last insured, March 31,

2005, and the 15 prior years.  In 1990, Plaintiff was employed doing commercial drywalling and

installation of firewalls.[44]  In 1992, Plaintiff took a job at the Oaklawn Jockey Club as a teller, while

---

[40] *Id.*

[41] *Id.*

[42] *Id.* 13-14.

[43] Tr. 31-41.

[44] *Id.* 32.

also working construction.[45]   The ALJ noted that Plaintiff's construction job involved a "lot of bending, stooping, [and] carrying materials."[46]  Plaintiff did not work in 1993 and 1994.[47]  Plaintiff began working with Oaks Brothers in 1995, doing work with drivet, plaster, and stucco.[48]  Plaintiff testified this work involved carrying one or two 70 pound buckets containing wet cement.[49] Through 1999, Plaintiff consistently did construction work.[50]  From  2000 through 2001, Plaintiff worked for a flooring company conducting inventory and organizing the warehouse.[51]  Plaintiff reported no income from 2002 through 2005, and less than $1,000 in 2001.[52]  The Vocational Expert testified that Plaintiff's work was consistent with the Dictionary of Occupational Titles and its related publications.[53]  Plaintiff also testified that he began building his home in 1989.[54]  He testified that he built the much needed septic tank for his home in 2005.[55]

In the opinion, the ALJ took into consideration Plaintiff's testimony regarding his past work experience and the testimony from the vocational expert.  The ALJ found that through the date last

---

[45] *Id.* at 33.

[46] *Id.*

[47] *Id.* at 34.

[48] *Id.*

[49] Tr. 35.

[50] *Id.* 35-36.

[51] *Id.* 36-37.

[52] *Id.* at 37.

[53] *Id.* at 41.

[54] *Id.* at 47.

[55] Tr. 48-50.

insured, Plaintiff "had the residual functional capacity to perform the full range of light work."[56]

In making this determination, the ALJ considered all of Plaintiff's symptoms and the extent that they

were consistent with the objective medical evidence and other evidence.[57]   While finding that

"claimant's medically determinable impairments could reasonably be expected to cause the alleged

symptoms," the ALJ found that Plaintiff's "statements concerning the intensity, persistence  and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

residual functional capacity assessment."[58]   Furthermore, the ALJ stated that "[b]ased on a careful

review of the objective medical evidence of record as a whole, the undersigned concludes that the

claimant's bowel disease and any related limitations were not severe to a degree that would have

limited basic work activities."[59]   Lastly, the ALJ found that "[b]ased on a residual functional

capacity for the full range of light work, the undersigned concludes that, through the date last

insured, considering the claimant's age, education, and work experience, a finding of 'not disabled'

is directed by the Medical-Vocational Rule 202.21 and Rule 202.14" [60]

While Plaintiff argues that the ALJ failed to fully develop the record by not asking Dr.

Johnson about any specific restrictions imposed on the Plaintiff, I find that the ALJ developed a

specific and thorough record and that he elicited all relevant testimony from Dr. Johnson.  I also find

that Plaintiff's argument that ALJ Neel did not afford Plaintiff a face-to-face hearing, and therefore

could not make objective findings, to be without merit.  Plaintiff was given the opportunity, through

---

[56] *Id*. at 12.

[57] *Id*.

[58] *Id*. at 14.

[59] *Id*.

[60] *Id*. at 15.

his testimony, to explain the pain and discomfort that his Crohn's Disease caused him.  The Court took this testimony into consideration and noted that the "inability to work without some pain or discomfort is not a sufficient reason to find a claimant disabled within the definition of the Act."[61] Therefore, based on the evidence presented at the hearing, I find that there was substantial evidence to support the ALJ's findings.

### B.      Reassignment of the Case from ALJ Smith to ALJ Neel.

Plaintiff argues that the reassignment of his case from ALJ Smith to ALJ Neel violated his due process rights.  Specifically, he argues that "[c]ertain minimum criteria must be met in order to satisfy due process requirements when one ALJ takes testimony and observed demeanor and subjective testimony of the plaintiff and another ALJ writes the decision."[62]  He contends that ALJ Neel's credibility findings and his failure to explain why ALJ Smith could not render the decision were specific violations of his due process rights.[63]  Plaintiff cites Hallex I-2-8-40 to support his contentions:

> [w]hen an Administrative Law Judge (ALJ) who conducted a hearing in a case is not available to issue the decision because of death, retirement, resignation, illness which has caused the ALJ to be on leave for such illness for at least twenty days and which illness would keep the ALJ from fulfilling necessary duties, or other cause resulting in prolonged leave of twenty or more days, the Hearing Office Chief ALJ (HOCALJ) will reassign the case to another ALJ. . . .
>
> If the ALJ is prepared to issue a less than fully favorable decision, another hearing may be necessary.  For example, another hearing would be necessary if relevant vocational expert opinion was not obtained at the hearing, or the claimant alleges disabling pain, and the ALJ believes the claimant's credibility and demeanor could be a significant factor in deciding the case.[64]

---

[61] Tr. 13.

[62] Doc. No. 10.

[63] *Id*.

[64] *Id*.  Hallex stands for Hearings, Appeals, and Litigation Manual.

In *Wilburn v. Astrue*, the United States Court of Appeals for the Eighth Circuit rejected a similar argument.[65]  In *Wilburn*, one ALJ presided over the initial hearing while a different ALJ presided over a supplemental hearing.[66]  The appellant argued that her due process rights were violated because she was not given notice that the supplemental hearing would be before a different ALJ.[67]  Specifically, she argued that the failure to notify her "denied her an opportunity to be meaningfully heard" because her attorney could not adequately prepare for a hearing presided over by a different ALJ.[68]  She further contended that the second ALJ "could not have properly fulfilled his responsibilities because he did not personally observe the testimony" at the original hearing.[69]

The Eighth Circuit found that the SSA did not violate any of its regulations by failing to provide advance notice.  The Court held that while not being informed of the substitution of the ALJ until the day of the hearing prevented appellant from objecting, she "still had a hearing and an opportunity to appeal to the Appeals Council where [she] could request revision of the decision or a new hearing before a different ALJ."[70]  Furthermore, the Court pointed out that the appellant's failure to "point to any specific SSA regulation requiring such notice, instead arguing various regulations viewed together compel [her] conclusion."[71]  In fact, the Court found that a review of

---

[65] 626 F.3d 999 (8th Cir. 2010).

[66] *Id*. at 1001.

[67] *Id*. at 1002.

[68] *Id*.

[69] *Id*.

[70] *Wilburn*, 626 F.3d at 1003.

[71] *Id*. at 1002.

the relevant SSA regulations did not provide for a notice requirement.[72]  The Court also noted that "'[i]t is well settled that a change in personnel in an administrative agency or tribunal during the course of a hearing, or at any time before the issuance of a final order on the hearing, does not invalidate the order.'"[73]  Lastly, the Eighth Circuit found that the appellant was unable to show how the substitution prejudiced her.[74]

In this case, Plaintiff argues that he should have been given written notice of the substitution of ALJ Neel for ALJ Smith, and he should have been notified of why ALJ Smith was unavailable. However, he provides no authority or regulation that requires written notice or an explanation of the substitution.  While he cites Hallex I-2-8-40, nothing in the language provided by him supports his argument.  As in *Wilburn*, it is clear that ALJ Neel read and reviewed the testimony and "properly discharged his duties."[75]  In fact, Plaintiff states in his brief that the ALJ "properly determined [his] age, education and past work and that the [P]lainitff's insured status expired on March 31, 2005. Plaintiff also agrees that the ALJ followed the first three steps of the sequential evaluation."[76]  As discussed above, I find that substantial evidence supported ALJ Neel's decision.  The reassignment of the case to ALJ Neel neither violated any regulations, nor did it prejudice the Plaintiff.

---

[72] *Id.*

[73] *Id.* at 1003 (quoting *Twin City Mill Producers Ass'n v. McNutt*, 122 F.2d 564, 569 (8th Cir. 1941)).

[74] *Id.*

[75] *Wilburn*, 626 F.3d at 1003-1004.

[76] Doc. No. 10.

## CONCLUSION

I hereby AFFIRM the final determination of the Commissioner and DISMISS Plaintiff's

Complaint with prejudice.

IT IS SO ORDERED this 9th day of November, 2011

/s/Billy Roy Wilson
UNITED STATES DISTRICT. JUDGE